Deborah G. KEPHART, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–92–00298–CR.

Court of Appeals of Texas, San Antonio.

March 17, 1993.

Ginny E. Campa, Gregory K. Zaney, Jamie Balagia, Austin, for appellant.

E. Bruce Curry, Dist. Atty., Susan Patterson, Asst. Dist. Atty., Kerrville, for appellee.

Before PEEPLES, BIERY and GARCIA, JJ.

PEEPLES, Justice.

Appellant Deborah Kephart was convicted by a jury for possession of cocaine in an amount under twenty-eight grams. The trial court assessed punishment at ten years' probation and a $10,000 fine. Appellant contends that the evidence is insufficient to support her conviction, and that a videotape should not have been admitted into evidence. We affirm.

At about 11:30 p.m. on October 13, 1991, the night clerk at the Comfort Inn in Fredericksburg, Texas called the police after he began to suspect that two motel guests were distributing controlled substances. The two people were later identified as Manuel M. Conde, Jr., a/k/a "Gato," and Carol King. The clerk told police that Conde appeared to be high on alcohol and/or drugs, and that he used a large wad of cash to pay for the room, but drove an old car. Conde made several long distance calls shortly after checking into the room. Other guests reported loud noises coming from the room. At 11:00 p.m., a police officer independently observed Conde enter a convenience store across the street from the motel and purchase nothing but a box of baking soda, known by narcotics officers to be used to make crack cocaine. After officers reported these facts to narcotics investigator Danny Flores, Flores positioned surveillance officers outside the couple's motel room. Officers saw Carol King leave the room at 3:00 a.m. to get a bag out of Conde's car, and again at 4:00 a.m. to get a bucket of ice. The officers did a background check on Conde and discovered that he had numerous arrests for possession of cocaine. Supervising officers determined that they had probable cause to detain Conde for questioning. At about noon on October fourteenth, Conde and King signed consent to search forms, and the police searched the motel room.

During their search, police found a small mirror with cocaine residue on it inside King's purse, a pipe with cocaine and marihuana residue on it, razor blades, a fingerscale, a baggie with white powder residue, a box of baking soda, a snuff can containing marihuana, over $800 in small bills, and a video camera with a videotape inside it. Conde and King were arrested for possession of cocaine in an amount under twenty-eight grams.

Later that afternoon, Investigator Flores and Gillespie County Sheriff Milton Jung watched the videotape; it was a recording of Conde and King with appellant in appellant's home. The sheriff recognized appellant and called her in for questioning. Appellant stated that Conde was an old friend of hers and that he and King stayed at her house the night of October twelfth. According to police, appellant told them that Conde, King, and appellant's husband were smoking marihuana and using cocaine that night. Appellant had a lot to drink, but did not use any drugs. In a written statement given to police that night, appellant used the words "white powder" instead of "cocaine." Appellant was subsequently indicted for possession of cocaine in an amount under twenty-eight grams.

■ In point three, appellant contends that the videotape should not have been admitted into evidence at trial. She argues that the proper predicate was not laid for the videotape's introduction because the state did not comply with the seven-part test for the admissibility of sound recordings set out in *Edwards v. State,* 551 S.W.2d 731 (Tex.Crim. App.1977). Although the *Edwards* test was created to determine the admissibility of audiotapes, it has been extended to apply to videotapes as well. *See Roy v. State,* 608 S.W.2d 645, 649 (Tex.Crim.App.1980); *but see Huffman v. State,* 746 S.W.2d 212, 221–22 (Tex.Crim.App.1988) (rules applicable to photographs apply to videotapes without sound).

■ Ordinarily, a party seeking to introduce a videotape must: (1) show that the recording device was capable of taking testimony; (2) show that the operator of the device was competent; (3) establish the authenticity and correctness of the recording; (4) show that changes, additions, or deletions have not been made; (5) show the manner of preservation of the recording; (6) identify the speakers; and (7) show that the testimony elicited was voluntarily made without any kind of inducement. *Edwards v. State,* 551 S.W.2d at 733. But because a videotape provides a visual image as well as sound, it is conveys greater indicia of reliability than either film or audiotapes standing alone. Therefore, when dealing with videotape, the *Edwards* requirements may be somewhat relaxed, and at least some of the elements may be inferred from the testimony. *See Lucas v. State,* 791 S.W.2d 35, 57 (Tex.Crim.App. 1989); *Roy v. State,* 608 S.W.2d at 649.

■ The State asserts, and we agree, that because the videotape was not made by law

enforcement personnel, the usual predicate is not applicable. We are aware of no cases applying the seven-prong *Edwards* test to videotapes or audiotapes made by private individuals. *Lucas* involves a confession videotaped by police, and *Roy* involves hidden cameras used by police to catch people selling stolen goods. The police did not make the tape before us; and there is no reason to believe that a videotape taken by a defendant, without litigation in mind, would not accurately portray the events it depicts. In this case, although appellant argues that the scenes on the tape did not appear in the order in which they were originally recorded, she never asserts that the events are otherwise inaccurately portrayed or that she appeared involuntarily.

■ Appellant also argues that the videotape should have been excluded because its probative value was substantially outweighed by its prejudicial effect. A trial judge has broad discretion in admitting video recordings and his action will not be disturbed absent an abuse of that discretion. *Marras v. State*, 741 S.W.2d 395, 404 (Tex.Crim.App. 1987). The videotape was relevant because it showed circumstances which could reasonably indicate the presence of narcotics in appellant's home. We cannot hold that the judge abused his discretion by admitting the videotape. This point of error is overruled.

■ In her second point of error, appellant asserts that there is insufficient evidence to convict her of possession of cocaine without relying on the law of parties. In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Jones v. State*, 833 S.W.2d 118, 122 (Tex.Crim.App.1992).

■ To support a conviction for unlawful possession, the State must prove that the accused (1) exercised care, control, or management over the contraband, and (2) knew the substance possessed was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex.

Crim.App.1988); *Humason v. State*, 728 S.W.2d 363, 364–65 (Tex.Crim.App.1987); *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). These elements may be proved by circumstantial evidence. *McGoldrick v. State*, 682 S.W.2d at 578; *Sewell v. State*, 578 S.W.2d 131, 135 (Tex.Crim. App.1979). A defendant's possession need not be exclusive; evidence the accused jointly possessed the contraband with another is sufficient. *McGoldrick v. State*, 682 S.W.2d at 578; *Sewell v. State*, 578 S.W.2d at 135; *Hernandez v. State*, 538 S.W.2d 127, 130 (Tex.Crim.App.1976). But a finding of joint possession cannot be justified solely on proof of mere presence in the vicinity of a controlled substance. *Humason v. State*, 728 S.W.2d at 365; *Hernandez*, 538 S.W.2d at 130. The State must also provide evidence of affirmative links between the defendant and the substance. *Humason v. State*, 728 S.W.2d at 365–66. Such evidence includes additional facts and circumstances which indicate the accused's knowledge and control. *Hernandez*, 538 S.W.2d at 130; *Patterson v. State*, 723 S.W.2d 308, 311–12 (Tex.App.— Austin 1987), *aff'd*, 769 S.W.2d 938 (Tex. Crim.App.1989).

There is evidence supporting appellant's conviction apart from her mere association with Conde and King, and the fact that she allowed them to use drugs in her home. King, who did not receive any leniency in exchange for her testimony at appellant's trial, testified that when she left for the weekend with Conde, he brought a clear, plastic baggie of cocaine with him. Conde brought the cocaine to appellant's home on October 12, 1991. While King was in appellant's home, appellant used a straw to inhale cocaine from a mirror. King made crack cocaine on appellant's stove, and appellant smoked it using a pipe. The mirror and pipe were found later in the motel room; lab tests showed traces of cocaine on both.

But Carol King is an accomplice. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the

commission of the offense." Tex.Code Crim. Proc.Ann. art. 38.14 (Vernon 1979).

The videotape taken that weekend corroborates King's testimony. It shows Conde holding a clear plastic baggie containing white powder. King testified that the powder is either cocaine or baking soda; plastic baggies of each were present. It is apparent from the context that baking soda would have been mixed with cocaine to make crack cocaine. In the video, appellant sat across a coffee table four to five feet away from Conde as he held the baggie. She also blew her nose several times. Police officers testified that this behavior is consistent with snorting cocaine. One time after appellant blows her nose Conde says, "Getting some gal that's nosin' her coke." Appellant says, "No, its allergies." Conde replies, "Yea, allergies, right."

Investigator Flores testified that paraphernalia shown on the videotape, including a straw, and baking soda with a spoon in it, would lead him to believe that there was cocaine at appellant's house. But he did admit that he did not actually see anybody using drugs on the tape.

Appellant's own statement to police when she was brought in for questioning provides additional evidence that tends to connect her with the offense committed. Sheriff Jung testified that on October fourteenth appellant told him that "the others had snorted cocaine" at appellant's home on the night depicted in the videotape. During appellant's interview with the sheriff, she referred to the substance as "cocaine," and admitted the others used drugs in her presence. In these circumstances a lay witness may testify that a substance was cocaine. *See Bright v. State,* 556 S.W.2d 317, 322 (Tex.Crim.App.1977), *overruled on other grounds, McClenan v. State,* 661 S.W.2d 108 (Tex.Crim.App.1983). In a written statement taken following questioning, appellant wrote that "a white powder was placed on a small mirror with an ivory colored border.... I laughed when a beer spilled on the powder. Gato and Carol used the powder."

When appellant testified at trial, she admitted that the videotape was made in her home. But she stated that she never told Sheriff Jung she knew there was cocaine in her house. Although she did testify that she saw "a little piece of a mirror and a white powder." Appellant testified that everything the sheriff said was untrue, and that another officer told her what to put in her statement. At trial, appellant testified that she was congested in the videotape because she had allergies at the time. A member of the grand jury that indicted appellant testified that appellant told the grand jury that she did not have allergies or a cold at the time in question. In her written statement to police, appellant called Conde an "old friend." But at trial she testified that Conde was an acquaintance of her husband's and that she did not even like him.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Vanderbilt v. State,* 629 S.W.2d 709, 715–16 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). It is free to accept or reject all or any part of the testimony of any witness. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penagraph v. State,* 623 S.W.2d at 343. We hold that there is sufficient evidence from which the jury could have found beyond a reasonable doubt that appellant committed the offense of possession of cocaine as a primary actor. Appellant's second point of error is overruled.

In her first point of error, appellant contends that she was denied a fair and impartial trial because the jury charge did not properly apply the law of parties to the facts of the case. The charge contains an abstract definition on the law of parties, but does not apply the law to the facts.

The application paragraph is the section of the charge which authorizes conviction. *Jones v. State,* 815 S.W.2d 667, 669 (Tex.Crim.App.1991). A charge which does not apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory, even if the charge contains an

abstract definition of the theory. *Jones v. State,* 815 S.W.2d at 670; *Nickerson v. State,* 782 S.W.2d 887, 891 (Tex.Crim.App.1990); *Garrett v. State,* 749 S.W.2d 784, 789 n. 6 (Tex.Crim.App.1986); *Oliver v. State,* 160 Tex.Crim. 222, 268 S.W.2d 467, 470 (1954). Therefore, the charge did not authorize conviction based on a parties theory. Because we have held that there is sufficient evidence to support appellant's conviction as a primary actor, any error resulting from the failure to apply the law of parties to the facts of the case is harmless error. *Brown v. State,* 716 S.W.2d 939, 945–46 (Tex.Crim.App.1986).

The judgment is affirmed.